No: 12-2955

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

TIM LORS,
Plaintiff-Appellant,

-vs-

JIM DEAN, et al.
Defendants-Appellees.

APPEAL FROM U.S. DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION
THE HONORABLE ROBERTO A. LANGE PRESIDING
(CIV 10-3024-RAL)

**APPELLEES' SECOND SUPPLEMENTAL BRIEF**

Douglas A. Abraham
May, Adam, Gerdes & Thompson LLP
P.O. Box 160
Pierre, SD 57501-0160
(605)224-8803
daa@magt.com
Counsel for Defendants-Appellees

Samuel R. Bagenstos
625 S. State St.
Ann Arbor, MI 48109
(734) 647-7584
sbagen@gmail.com
Counsel for Plaintiff-Appellant

# TABLE OF CONTENTS

Page No.

PROCEDURAL HISTORY............................................................. 1

ARGUMENT............................................................................ 5

CONCLUSION......................................................................... 19

CERTIFICATE OF COMPLIANCE............................................. 21

CERTIFICATE OF SERVICE .................................................... 22

i

# TABLE OF AUTHORITIES

CASES CITED:                                                    Page No.

*Alaska v. EEOC*, 564 F.3d 1062 (9th Cir. 2009) ..................................... 13-14

*Altonen v. City of Minneapolis*, 487 F.3d 554 (8th Cir. 2007) ...............11, 14

*Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001) ...................................................................................................... *passim*

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ..................................... *passim*

*Connick v. Myers*, 461 U.S. 138 (1983) ........................................................14

*Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001) .............................. *passim*

*Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) ....................................................7

*Jones v. Lubbock*, 727 F.2d 233 (5th Cir. 1984) ...........................................18

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) .....................................6

*Lors v. Dean*, No. 07-3017, 2008 WL 5233105 (D.S.D. Dec. 15, 2008)....1, 2

*Lors v. Dean*, 595 F.3d 831 (8th Cir. 2010) ...................................................1

*McCullough v. Univ. of Arkansas for Med. Sciences*, 559 F.3d 855 (8th Cir. 2009) ...................................................................................................... *passim*

*Morr v. Missouri Dept. of Health*, No. 4:08CV359 RWS, 2009 WL 1140108 (April 28, 2009 E.D. Mo.) ......................................................................... 3-4

*Pleasant-El v. Oil Recovery Co.*, 148 F.3d 1300 (11th Cir. 1998) ................18

*Reed v. College of the Ouachitas*, No. 6:11CV6020, 2012 WL 1409772 (April 23, 2012 W.D. Ark.) .......................................................................................3

ii

*Schilcher v. Univ. of Arkansas*, 387 F.3d 959 (8th Cir. 2004) .....................11

*Tennessee v. Lane*, 541 U.S. 509 (2004) ............................................... *passim*

*Thatcher v. Tennessee Gas Transmission Co.*, 180 F.2d 644 (5th Cir. 1950)18

*Tinzie v. Ark. Dept. of Workforce Servs.*, No. 4:11CV00683 SWW, 2012 WL 1739859 (E.D. Ark. May 16, 2012)..................................................................4

*United States v. Georgia*, 546 U.S. 151 (2006)..................................... *passim*

*Zied-Campbell v. Richman*, 2007 U.S. Dist. LEXIS 23469, 18 (M.D. Pa. Mar. 30, 2007) ......................................................................................................12

FEDERAL STATUTES CITED:

First Amendment of the United States Constitution ...................... *passim*

Eighth Amendment of the United States Constitution .......................... 10

Eleventh Amendment of the United States Constitution ................ *passim*

Fourteenth Amendment of the United States Constitution ............ *passim*

28 U.S.C. § 2403(a) ................................................................................ 17-18

42 U.S.C. §§ 12111 *et seq*(ADA Title I)................................................ *passim*

42 U.S.C. §§ 12131 *et seq*(ADA Title II)............................................... *passim*

42 U.S.C. §§ 12201 *et seq*(ADA Title V) ............................................. *passim*

42 U.S.C. § 12202............................................................................................6

## PROCEDURAL HISTORY

The present action stems from an allegation of discrimination under Title I of the Americans with Disabilities Act that was filed by Appellant after he was transferred positions by his employer, the South Dakota Bureau of Information and Technology ("BIT"). Lors' initial claim for discrimination was rejected when the District Court granted summary judgment for Defendants on December 15, 2008. *See Lors v. Dean*, No. 07-3017, 2008 WL 5233105 (D.S.D. Dec. 15, 2008). Lors appealed that decision to the Eighth Circuit Court of Appeals. Lors was terminated during the pendency of that appeal. Thereafter, the Eighth Circuit Court of Appeals affirmed the District Court's grant of summary judgment. *See Lors v. Dean*, 595 F.3d 831 (8th Cir. 2010).

After his termination, Lors filed a grievance with the South Dakota Career Service Commission as well as an appeal before the Unemployment Insurance Appeals Division of the South Dakota Department of Labor. The Career Service Commission found that the BIT terminated Lors' employment for cause and that no credible evidence existed supporting Lors' claim for retaliation for the filing of his discrimination lawsuit. The Sixth Judicial

1

Circuit Court of the State of South Dakota affirmed the Career Service Commission's findings. Similarly, the Unemployment Insurance Appeals Division found Lors was not eligible for benefits because he had been terminated for misconduct.

Thereafter, Lors commenced the action that is the subject of the present appeal. Lors' Complaint alleged various violations including violations of Titles I and V of the ADA. Defendants answered and asserted various defenses, including the Eleventh Amendment and the Doctrine of Sovereign Immunity.

After substantial discovery, Defendants moved for summary judgment. The District Court found Lors established a *prima facie* case of retaliation but also found the Defendants had rebutted the presumption of retaliation by articulating a legitimate, non-retaliatory reason for the adverse employment action. *Lors v. Dean*, No. 10-3024-RAL, 2012 WL 2970492 at *8 (D.S.D. July 20, 2012). The District Court further found that due to the preclusive effect of the Career Service Commission ruling and the Unemployment Insurance Appeals Division ruling:

> Lors' evidence and explanations are not sufficient as a matter of
> law to create a genuine issue of material fact as to whether the
> employer's proffered reasons were pretextual or create an issue

2

of fact on that subject, especially when the findings of two state
tribunals have found preclusive effect that there was cause for
BIT to discipline Lors and terminate Lors' employment apart
from the ADA claim.

*Id.*

Lors appealed the District Court's decision.   The Eighth Circuit Panel,
*sua sponte*, issued an Order for supplemental briefing to address whether Lors'
claims against the State and its employees under Titles I and V of the ADA
were barred by sovereign immunity.   Thereafter, the parties submitted
supplemental briefs on the issue as directed and the panel heard oral argument.

Subsequently, the panel issued its Opinion and held sovereign immunity
shielded the State Defendants from Lors' claims for money damages under
Titles I and V of the ADA and thus the Court lacked jurisdiction to determine
his claims and remanded the case for further action consistent with its decision.
In so holding, the Court acknowledged the Supreme Court of the United States'
decision in *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S.
356 (2001) and its application to Title V of the ADA consistent with all federal
courts that have entertained the issue.   *See Demshki v. Monteith*, 255 F.3d 986,
988 (9th Cir. 2001); *Reed v. College of the Ouachitas*, No. 6:11CV6020, 2012
WL 1409772 (April 23, 2012 W.D. Ark.); *Morr v. Missouri Dept. of Health*,

3

No. 4:08CV359 RWS, 2009 WL 1140108 (April 28, 2009 E.D. Mo.); *Tinzie v. Ark. Dept. of Workforce Servs.*, No. 4:11CV00683 SWW, 2012 WL 1739859 (E.D. Ark. May 16, 2012).

At oral argument, the Court specifically noted that Article II claims had been allowed by subsequent decisions of the Supreme Court of the United States, such cases specifically referencing *Garrett* and acknowledging the application of *Garrett* to Title I claims. The panel opinion found the ADA's attempted abrogation of sovereign immunity invalid because "sovereign immunity shields the state defendants against Lors' claims for money damages and that Lors did not plead a claim for prospective injunctive relief, we have no jurisdiction to consider the merits of Lors' appeal."

Lors subsequently submitted a petition for rehearing arguing the panel failed to certify the constitutionality question to the Attorney General pursuant to 28 U.S.C. § 2403(a) and failed to properly consider the applicability of *United States v. Georgia*, 546 U.S. 151 (2006) and *Tennessee v. Lane*, 541 U.S. 509 (2004). The panel granted the petition for rehearing, vacated their prior decision, and directed the parties to submit supplemental briefs on the aforementioned issues.

Appellate Case: 12-2955    Page: 8    Date Filed: 11/13/2013 Entry ID: 4095478

# ARGUMENT

### A. *Tennessee v. Lane* and *United States v. Georgia* Do Not Justify The Abrogation of Sovereign Immunity When Applied to Lors' Claims.

The underlying action involved in *Tennessee v. Lane* was brought by a pair of disabled paraplegics who used wheelchairs for mobility and involved claims that the plaintiffs were denied access to, and the services of, the state court system by reason of their disabilities. *Lane*, 541 U.S. at 513. The plaintiffs sought damages and equitable relief alleging that Tennessee and a number of its counties had denied them physical access to the state courts in violation of Title II of the ADA, which provides: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation or denied the benefits of the services, programs, or activities of the public entity." *See Id.* at 513-15. The state defendants moved to dismiss and claimed Eleventh Amendment sovereign immunity. *Id.* at 514. The Sixth Circuit held the case in abeyance pending the United States Supreme Court decision in *Board of Trustees v. Garrett*, 531 U.S. 536 (2001). The Supreme Court thereafter ruled in *Garrett* that the Eleventh Amendment bars actions for money damages for state violations of ADA Title I, which provision

5

prohibits employment discrimination against the disabled. *See generally*

*Garrett*, 531 U.S. 356.

Specifically, the *Lane* Court described its ruling in *Garrett* as follows:

> In *Garrett*, we concluded that the Eleventh Amendment barred
> private suit seeking money damages for state violations of Title I
> of the ADA. We left open, however, the question whether the
> Eleventh Amendment permits suits for money damages under
> Title II.

*Lane*, 541 U.S. at 514.

The question of whether the Congress has constitutionally abrogated

states' Eleventh Amendment immunity requires resolution of two issues,

(1) whether Congress has unequivocally expressed its intent to abrogate state

sovereign immunity; and (2) if Congress has done so, whether it abrogated such

sovereign immunity pursuant to a valid grant of constitutional authority. *See*

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 63 (2000). Through 42 U.S.C.

§ 12202, Congress unequivocally expressed its' intent to abrogate states'

sovereign immunity under the Eleventh Amendment:

> A State shall not be immune under the eleventh amendment to
> the Constitution of the United States from an action in a Federal
> or State court of competent jurisdiction for a violation of this
> chapter. In any action against a State for a violation of the
> requirements of this chapter, remedies (including remedies both
> at law and in equity) are available for such a violation to the same

6

extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

Congress may abrogate state sovereign immunity pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment. *See e.g. Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). But, Congress' power and authority to abrogate sovereign immunity of the states as expressed in the Eleventh Amendment is not without limitation. Congress has the authority to enact appropriate remedial and preventative measures to enforce constitutional actions, but in doing so it may not work a "substantive change in the governing law." *See City of Boerne v. Flores*, 521 U.S. 507, 519 (1997).

In *Boerne* the Supreme Court established a test for determining whether congressional abrogations were permissible remedial legislation or unconstitutional substantive redefinition. *Id.* at 520. Such legislation is permitted remedial legislation if it exhibits "a congruence and proportionality" between the injury and the means adopted to prevent or remedy it. *Id.*

In *Garrett,* the Supreme Court concluded that the abrogation of state sovereign immunity in regard to ADA Title I claims was not a valid exercise of Congress' § 5 power because the historical record and the statute's broad scope suggested that Congress' enactment of Title I was not merely an effort at

7

enforcement, but was an attempt to rewrite the Supreme Court's Fourteenth Amendment jurisprudence. *See Garrett*, 531 U.S. at 372-74. The *Garrett* court did not address whether Title II was a valid exercise of Congress' Section 5 power. *Id.* at 360.

The Supreme Court's first crack at whether Title II was a valid exercise of Congress's Section 5 enforcement power came in *Tennessee v. Lane*. Pursuant to *Boerne*, the *Lane* court's initial inquiry was to determine and identify the constitutional right or rights Congress sought to enforce in enacting Title II's abrogation of sovereign immunity. *See Lane*, 541 U.S. at 522, citing *Garrett*, 531 U.S. at 365. The *Lane* court found Title II seeks to enforce a variety of basic constitutional guarantees beyond Title I's prohibition on irrational disability discrimination. *See Lane*, 541 U.S. at 522-23.

Most significantly, the *Lane* court found that Title II sought to enforce the right of access to the courts as was implicated by the plaintiffs in *Lane's* complaint that they were denied physical access to the court system. *Id.* Unlike Title I, the congressional record was replete with findings of pervasive discrimination against people with disabilities by states and their political subdivisions in providing access to the courts. *Id.* at 526-28. Because the *Lane* Court found a substantial history and pattern of unequal treatment in

8

regard to individuals with disabilities and the accessibility of judicial services, the only further inquiry for the Court was to determine whether Title II was an appropriate response to such a substantial history. *Id.* at 530-31. In considering that question, the court found Title II was an appropriately tailored response to the history and pattern of unequal treatment, but only as applied to accessibility of judicial services and access to the courts. *Id.* at 537-38.

Subsequent to the Supreme Court's ruling in *Lane*, the Court considered whether Title II validly abrogates state sovereign immunity where states' conduct actually violates the Fourteenth Amendment. *See generally Georgia*, 546 U.S. 151. Factually, *Georgia* involved a wheelchair-bound inmate in the Georgia prison system who claimed he was confined for twenty-three to twenty-four hours per day in a twelve by three foot cell in which he could not turn his wheelchair around and which afforded him insufficient access to wheelchair accessible facilities and at times had rendered him unable to use the toilet and shower without assistance. *See Georgia* 546 U.S. at 154-55. The inmate in *Georgia* further alleged that the aforementioned facility restrictions had caused him to incur injuries in attempting to transfer from his wheelchair to the shower or toilet on his own and had on other occasions required him to sit in his own feces or urine while prison officials refused to assist him. *Id.*

9

The Supreme Court granted certiorari to consider whether Title II of the ADA incorporates a cause of action for damages against the states for conduct that actually violates the Fourteenth Amendment. *Id.* at 158-59. The *Georgia* court held that to the extent the plaintiff's accusations involved a violation of the substantive provisions of the Fourteenth Amendment, to-wit, the Due Process clause's incorporation of the Eighth Amendment's guarantee against cruel and unusual punishment, Congress has the power to abrogate state sovereign immunity by authorizing private suits for damages against the states. The plaintiff in *Georgia* also alleged conduct that was not an actual constitutional violation. In remanding the matter, the Supreme Court directed that these claims were to be addressed by a lower court on a claim-by-claim basis by first examining:

> (1) Which aspects of the state's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress' purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.

Thus, in light of the Court's direction for supplemental briefing, we must inquire as to what application *Lane* and *Georgia* have to the present case

10

involving Mr. Lors.   Following *Lane's* framework, *Georgia* provides the applicable claim-by-claim framework for evaluating the present matter. *Id*. First, we must look to the conduct that purportedly violated Title V. Lors alleges a violation of Title V of the ADA in that he claims he was retaliated against for filing a complaint that alleged that he suffered discrimination due to the fact that he is an individual with a disability and was not properly accommodated in violation of Title I of the ADA. Such claim was meritless. *See Lors,* 595 F.3d 831.

Second, in light of *Georgia*, we must consider whether Lors' claims also implicate a substantative constitutional violation. *Georgia,* 546 U.S. at 159. Whether expressive activity is protected by the First Amendment is a legal question. *See Schilcher v. Univ. of Arkansas*, 387 F.3d 959, 963 (8th Cir. 2004) citing *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007).   Via his petition for rehearing, Lors has claimed the State actors' alleged retaliatory termination violated his First Amendment rights as incorporated by the due process clause of the Fourteenth Amendment. *See* Appellant's Petition for Rehearing, p. 10.   Lors' argument fails for multiple reasons.

Although Appellees have addressed Lors' argument below, this Court should find as a Pennsylvania District Court addressing a nearly identical case

11

did and dismiss the action because "Plaintiff has not alleged any actual violations of the Fourteenth Amendment; rather, [he] brings h[is] claims under the broader scope of Title[V]. Therefore, as *Georgia* instructs, the Court proceeds with its analysis under *City of Boerne*." *Zied-Campbell v. Richman*, 2007 U.S. Dist. LEXIS 23469, 18 (M.D. Pa. Mar. 30, 2007). This Court has already conducted the *Boerne* analysis in its' vacated decision and found Title V's abrogation to have exceeded Congressional authority. *See* Vacated Decision 6-8.

The allegations in Lors' complaint do not make out a violation of Lors' own First Amendment rights. His Complaint alleges no such violation. He asserts no facts that would support such a violation but instead seeks to rewrite his Complaint. This clearly precludes a finding of abrogation of sovereign immunity as to Lors' claims because his Complaint does not identify a claimed violation of his First Amendment rights; accordingly, the *Georgia* analysis must fail because there is no First Amendment "claim" identified by his pleadings to conduct the part two analysis. *See Georgia,* 546 U.S. at 159. Lors seeks to litigate on behalf of a "class of cases" involving hypothetical public employees because his own Complaint is fatally insufficient. *See* Petition for

12

Rehearing, p. 11. Under *Georgia*, **Lors** must have asserted a violation of his own First Amendment Rights. *See Georgia*, 546 U.S. at 158-9.

Lors now claims his alleged retaliatory termination violated his First Amendment rights as his assertion of the underlying ADA Title I claim was speech of a "public concern". This argument has been fabricated for his Petition for Rehearing and was not raised in his Complaint. In doing so, Lors seeks to rewrite the substantive law in violation of *Boerne* by asserting that the filing of any ADA action so implicates the First Amendment rights of the litigant that any purported retaliation due to the filing necessarily violates such rights as incorporated by the Fourteenth Amendment. *See generally Georgia*, 546 U.S. 151 (2006).

The case cited by Lors in his Petition for Rehearing, *Alaska v. EEOC*, does not stand for that proposition. 564 F.3d 1062, 1069-71 (9th Cir. 2009). *Alaska* involved an employee's First Amendment rights to the extent the employee spoke out publicly concerning alleged violations, not to the extent the employee litigated such issues. *Id.* at 1069. This difference is dispositive as *Lors* can point to no such statement. *Georgia* requires an ADA litigant allege conduct that "*actually* violates the Fourteenth Amendment". 546 U.S. at 159 (emphasis in original). Lors' argument is unsupported by case law and if

13

adopted would have the effect of rewriting *Garrett* as under Lors' argument, by

merely asserting a Title I claim through litigation, a public employee's First

Amendment rights would be implicated to the extent that such conduct would

be protected under *Georgia*.   Perhaps more significantly, the *Alaska* decision

involved actual speech implicating a "public concern". 564 F.3d at 1069-70;

*see Connick v. Myers*, 461 U.S. 138, 146-47 (1983).

  Notably, a public employee's speech is only protected to the extent it

relates to a matter of "public concern". *See Connick v. Myers*, 461 U.S. 138,

146 (1983). As the Eighth Circuit has previously held, not all litigation is

protected by the First Amendment. *See Altonen,* 487 F.3d at 558.   Lors would

have the Court piggyback and equate ADA accommodations to racial

discrimination in order to short circuit the public concern analysis. *See* Petition

for Rehearing p. 11. That analysis ignores this Circuit's precedent. *See*

*McCullough v. Univ. of Arkansas for Med. Sciences*, 559 F.3d 855, 866 (8th

Cir. 2009)(in order to be afforded protection, public employee's speech must be

motivated by public concern, not a desire to keep his job). Lors' claims, as

asserted in *Lors I*, involved an alleged refusal to accommodate his disability,

the assertion of which was due to his anger at being transferred from his

position as team leader. *See Lors*, 595 F.3d at 833. Parallelling *McCullough*,

Appellate Case: 12-2955     Page: 18     Date Filed: 11/13/2013 Entry ID: 4095478

Lors' claims in *Lors I* sought reinstatement to his prior position, not to speak as a concerned citizen. *Compare McCullough*, 559 F.3d at 866; and *Lors*, 595 F.3d at 833. The record in that regard is well developed; as this Court found:

> On October 29, 2004, Dean wrote Lors a letter explaining that as of November 9, 2004, Lors would be removed from the position of team leader and would be placed in the position of a computer support analyst. The letter called the move a "lateral transfer" and explained that his pay grade and salary would not be changed. The letter explained that Lors was to be removed because he "continue[d] to have difficulty getting along with others . . . [and Dean] continue[d] to get complaints about [Lors's] ability to be a team player." (Id.) At the time Lors was removed from the position of team leader, Dean and Dufour were aware that Lors had type 1 diabetes.
>
> After being removed, Lors was first assigned to provide computer support services in the South Dakota Women's Prison (SDWP). In January 2005, Lors expressed concern that the unpredictable nature of his job-required physical activity at the SDWP made controlling his diabetes difficult and that he might be inside the secure perimeter of the SDWP without his diabetes supplies during a lockdown. As a result of Lors's concerns, Dean reassigned Lors to another building in February 2005. In a letter dated February 18, 2005, Dean wrote that "unless there is an emergency," Lors was permitted to "decide what to do when" in completing his work in a way that would allow him to manage his diabetes. The letter also stated that, in the event of a work emergency, Lors could ask to have the work assigned to another analyst to ensure his blood sugar levels were in an acceptable range before continuing work. Lors continued to express displeasure with his job and demand that he be returned to the position of team leader, since he believed the position of computer support analyst did not provide him the consistency and low level of stress that he believed he needed to properly

15

control his diabetes. In a letter dated August 2, 2005, Dean wrote that Lors was "argumentative, uncooperative, and insubordinate," and that Lors had "become defensive and even more difficult to get along with" following the transfer out of the position of team leader and reiterated that Lors was able to control his work schedule and decide what to do when.

*Lors*, 595 F.3d at 833. This Court also found:

Lors further argues that the accommodation the appellees offered Lors was ineffective because it did not provide consistency or predictability. Lors's experts testified that, even without accommodations, a hypothetical employee of Lors's age and general health could adequately manage his diabetes without accommodations. **Thus, Lors offered no evidence that accommodations were necessary.**

*Id*. at 835 (emphasis added). Thus, like *McCullough*, Lors' ADA Title I claim

was not motivated by public concern,

but the dominant theme is that of an employee engaged in a personal battle to retain his job. McCullough does raise important public issues of sexual harassment and organizational disruption, but "the mere fact that the topic of [an] employee's speech [is] one in which the public might or would have had a great interest is of little moment." *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993) (internal quotation omitted). Our focus remains on McCullough's purpose in speaking, and we agree with the district court that the better view is that these complaints are primarily oriented toward McCullough's self-interest, rather than the public interest.

*McCullough*, 559 F.3d at 867.

16

Lastly, the ADA's anti-retaliation abrogation of sovereign immunity is not valid as a "reasonable prophylactic measure" as applied to the "class of cases" alleging retaliation by public employers. *See Id.* at 11.   No court has found the ADA Title V anti-retaliation provision to enforce a public employee's First Amendment rights.   No evidence exists in the Congressional Record that the ADA anti-retaliation provision was meant to enforce First Amendment rights of public employees.

Further, the analysis under the third factor espoused in *Georgia* is identical to the analysis this Court previously relied upon prior to granting Lors' Petition for Rehearing.   Lors' Title V retaliation claim is predicated upon his conduct in filing a Title I ADA discrimination claim.   Thus, in determining whether there is a sufficient pattern of discrimination by the states that would justify and warrant the abrogation of their sovereign immunity, we must determine whether Congress identified evidence of such a violation. This panel previously relied upon *Garrett* and *Demshki* in stating and quoting:

> 'There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled. Absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims. *See Garrett*, 121 S. Ct. at 967-68.'

17

The Ninth Circuit recognized that the Supreme Court's holding in *Garrett* 'necessarily applies to claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I.'

Vacated Decision, p. 7.

> ### B. Failure to certify the question of constitutionality of the federal statute to the Attorney General should afford the opportunity for intervention.

In a conventional form, 28 U.S.C. § 2403(a) requires

> In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Conventionally, certification pursuant to 28 U.S.C. § 2403(a) would occur at the District Court level as soon as the issue of constitutionality is raised. In the present matter, the Eighth Circuit Panel raised the issue of constitutionality *sua sponte* prior to oral argument after summary judgment had been granted at the District Court level on other grounds.

18

Various circuit courts of appeals have addressed the issue of a failure to certify the question in different capacities. *See Jones v. Lubbock*, 727 F.2d 233 (5th Cir. 1984)(certifying opinion to Attorney General and expressing willingness to entertain motion for rehearing); *Thatcher v. Tennessee Gas Transmission Co.*, 180 F.2d 644 (5th Cir. 1950)(making United States party to proceeding); *Pleasant-El v. Oil Recovery Co.*, 148 F.3d 1300 (11th Cir. 1998)(remanding matter to District Court). Given how the present issue was raised, it seems most appropriate that the Court of Appeals would provide the Attorney General's Office a specified period of time within which the Attorney General's Office could intervene and defend the constitutionality of the abrogation of sovereign immunity.

## CONCLUSION

*Lane* and *Georgia* do not justify the abrogation of sovereign immunity when applied to Lors' claims. Lors has offered no evidence of an actual violation of his Fourteenth Amendment Rights. Lors' speech was unequivocally self-motivated and was not on a protected matter of "public concern". As Lors' Constitutionally protected rights are not implicated, this Court's prior analysis and application of *Demshki* is appropriate in determining Congress exceeded its' § 5 authority in abrogating sovereign immunity.

19

Lastly, it is critical to note that in the unlikely event this Panel may find the State's sovereign immunity was validly abrogated, the District Court found, on grounds independent of sovereign immunity, for the Appellees on the merits.

Dated this 12th day of November, 2013.

MAY, ADAM, GERDES & THOMPSON LLP


BY: */s/Douglas A. Abraham*
DOUGLAS A. ABRAHAM
Attorneys for Defendants-Appellees
503 South Pierre Street
P.O. Box 160
Pierre, South Dakota      57501-0160
Telephone: (605)224-8803
Telefax: (605)224-6289
E-mail daa@magt.com

20

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing Appellees' Supplemental Brief complies with Court's October 10, 2013 Order. Times New Roman 14-point type face is used, and excluding the cover page, Table of Contents, Table of Authorities, Addendum, Certificate of Compliance, and Certificate of Service, this Brief contains 4,338 words. Pursuant to Eighth Circuit Rule of Appellate Procedure 28A(c), the undersigned certifies that the name and version of word processing software used to prepare the Brief is Microsoft Office Word.

Dated this 12th day of November, 2013.

MAY, ADAM, GERDES & THOMPSON LLP

*/s/Douglas A. Abraham*
DOUGLAS A. ABRAHAM
Attorneys for Defendants-Appellees
503 South Pierre Street
P.O. Box 160
Pierre, South Dakota    57501-0160
Telephone: (605)224-8803
Telefax: (605)224-6289
E-mail daa@magt.com

21

**CERTIFICATE OF SERVICE
FOR DOCUMENTS FILED USING CM/ECF**


I hereby certify that on November 12th, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.   I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*/s/Douglas A. Abraham*
DOUGLAS A. ABRAHAM
Attorneys for Defendants-Appellees
503 South Pierre Street
P.O. Box 160
Pierre, South Dakota        57501-0160
Telephone: (605)224-8803
Telefax: (605)224-6289
E-mail daa@magt.com