No. 12-2955

In the United States Court of Appeals
for the Eighth Circuit

Tim Lors, *Plaintiff-Appellant*,

v.

Jim Dean, et al., *Defendants-Appellees*.

———————————————————

Appeal from the United States District Court
for the District of South Dakota—Pierre

———————————————————

**Supplemental Brief for the Appellant**

———————————————————

Samuel R. Bagenstos
625 S. State St.
Ann Arbor, MI  48109
(734)647-7584
sbagen@gmail.com
*Counsel for Plaintiff-Appellant*

# Table of Contents

Introduction and Summary of Argument ..................................................... 1

Argument ................................................................................ 7

    I.  The ADA's Abrogation is Constitutional as Applied to This Case, Because the State Conduct that Violated the ADA Also Violated Lors's First Amendment Rights .................................................. 7

    II.  Even if the State Did Not Violate Lors's First Amendment Rights, the ADA's Abrogation is Constitutional As Applied to the Class of Cases in Which a State Retaliates Against its Employee's Filing of an ADA Lawsuit ........................................................ 13

    III.  Even if the Court Concludes That the ADA Does Not Validly Abrogate Sovereign Immunity Here, Lors's Claim for Reinstatement Can Proceed Under *Ex Parte Young* ................. 21

    IV.  If the Court Addresses the Constitutionality of the ADA's Abrogation of Sovereign Immunity as Applied to This Case, It Must Certify the Case to the Attorney General ........................ 24

Conclusion ............................................................................. 25

Certificate of Compliance and Virus Scanning

Certificate of Service

Appellate Case: 12-2955    Page: 2    Date Filed: 11/13/2013 Entry ID: 4095750

# Table of Authorities

**Cases:**

*Alaska v. EEOC*, 564 F.3d 1062 (9th Cir. 2009) (*en banc*), cert. denied, 558 U.S. 1111 (2010) ................................................................. 20

*Altonen v. City of Minneapolis*, 487 F.3d 554 (8th Cir. 2007) ................. 12

*Azzaro v. County of Allegheny*, 110 F.3d 968 (3d Cir. 1997) ..................... 9

*BE & K Construction Co. v. NLRB*, 536 U.S. 516 (2002) ............... 7, 13, 15

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983) ............... 15

*Blodgett v. Holden,* 275 U.S. 142 (1927) ...................................................... 2

*Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001) ................................................................. 17, 18, 19, 20

*Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011) ......... 7, 10, 13, 15

*Campbell v. Arkansas Dep't of Correction*, 155 F.3d 950 (8th Cir. 1998) ................................................................. 22

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ..................................... 5, 15

*Connick v. Myers*, 461 U.S. 138 (1983) ............................................. *passim*

*Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001) ............................ 20, 21

*Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*) ............................... 22

*Ex parte Young*, 209 U.S. 123 (1908) ................................................. *passim*

*Greenwood v. Ross*, 778 F.2d 448 (8th Cir. 1985) ...................................... 8

*Gunter v. Morrison*, 497 F.3d 868 (8th Cir. 2007) ....................... 10, 11, 12

*Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) ............................ 22, 23

Appellate Case: 12-2955     Page: 3     Date Filed: 11/13/2013 Entry ID: 4095750

**Cases, ctd.:**

*Hall v. Missouri Highway & Transp. Comm'n*, 235 F.3d 1065 (8th Cir. 2000).................................................................................. 8

*Hagans v. Lavine*, 415 U.S. 528 (1974)....................................................... 1

*IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013).................................... 10

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569 (8th Cir. 1988) ................................................................. 11

*Kozisek v. County of Seward*, 539 F.3d 930 (8th Cir. 2008) ...................... 8

*Leshinskie v. N. Montco Area Vocational Technical Sch.*, CIV. A. 88-7972, 1989 WL 30685 (E.D. Pa. Mar. 29, 1989) ............................................ 9

*Marshall v. Allen*, 984 F.2d 787 (7th Cir. 1993) ........................................ 9

*Matulin v. Vill. of Lodi*, 862 F.2d 609 (6th Cir. 1988)................................ 9

*McCullough v. Univ. of Arkansas for Med. Sciences*, 559 F.3d 855 (8th Cir. 2009) ..................................................................................... 12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................ 4

*NAACP v. Button*, 371 U.S. 415 (1963)....................................................... 7

*Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721 (2003)............................................................................... 13, 15, 18, 19

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978)................. 10

*Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193 (2009)............................................................................................ 1, 2, 17

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000)....................................... 9

*Richardson v. Sugg*, 448 F.3d 1046 (8th Cir. 2006) ................................... 8

Appellate Case: 12-2955     Page: 4     Date Filed: 11/13/2013 Entry ID: 4095750

**Cases, ctd.:**

*Sexton v. Martin*, 210 F.3d 905 (8th Cir. 2000)........................................... 9

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) ....................................... 7, 15

*Tennessee v. Lane*, 541 U.S. 509 (2004) ........................................... *passim*

*United States v. Baltimore County*, No. 1:12-cv-02327 (D. Md. 2012) .... 17

*United States v. City of Colorado Springs*, 07-cv-02560-LTB-CBS
(D. Colo. 2008) ...................................................................... 17

*United States v. Georgia*, 546 U.S. 151 (2006) ................................. *passim*

*United States v. Raines*, 362 U.S. 17 (1960)................................................. 3

*Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632
(2011)...................................................................................... 22

*Warren v. Ohio Dep't of Pub. Safety*, 24 F. App'x 259 (6th Cir. 2001)...... 8

*Washington State Grange v. Washington State Republican Party*,
552 U.S. 442 (2008) ............................................................... 2

**Constitutional Provisions, Statutes, and Rules:**

First Amendment ............................................................... *passim*

    Speech Clause................................................................ *passim*

    Petition Clause............................................................... *passim*

Fourteenth Amendment ...................................................... *passim*

    Equal Protection Clause............................................... 18, 20

    Section 5 ................................................................. 2, 14, 17

Appellate Case: 12-2955    Page: 5    Date Filed: 11/13/2013    Entry ID: 4095750

**Constitutional Provisions, Statutes, and Rules, ctd.:**

28 U.S.C. § 2403(a) ................................................................ 6, 24, 25

Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*................... 18, 19

Civil Rights Act of 1957, 42 U.S.C. § 1971 ................................................ 3

Government Employee Rights Act, 42 U.S.C. § 2000e-16a .................... 21

Americans with Disabilities Act ........................................................ *passim*

    Title I, 42 U.S.C. § 12111 *et seq.* ..................................................... 5, 14

    Title II, 42 U.S.C. § 12131 *et seq.* .................................................... 1, 14

    Title V, 42 U.S.C. § 12201 *et seq.*............................................... 5, 14, 15

    42 U.S.C. § 12202 ................................................................................ 25

Fed. R. Civ. P. 12(b)(1) ............................................................................ 23

Fed. R. Civ. P. 12(e) ................................................................................ 23

Fed. R. App. P. 44(a) ....................................................................... 6, 24, 25

**Secondary Sources:**

ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, A JOURNALIST'S
    GUIDE TO THE FEDERAL COURTS (2011) ............................................... 11

Deborah L. Brake, *Retaliation*, 90 MINN. L. REV. 18 (2005) ................... 16

B. Glenn George, *Revenge*, 83 TUL. L. REV. 439 (2008) ......................... 16

Richard Moberly, *The Supreme Court's Antiretaliation Principle*,
    61 CASE W. RES. L. REV. 375 (2010)....................................................... 9

Appellate Case: 12-2955    Page: 6    Date Filed: 11/13/2013 Entry ID: 4095750

**Secondary Sources, ctd.:**

ROBERT TIMOTHY REAGAN, SEALING COURT RECORDS AND PROCEEDINGS: A POCKET GUIDE (Federal Judicial Center 2010)..................................... 11

UNITED STATES DEPT. OF JUSTICE, CIVIL RIGHTS DIVISION, ENFORCING THE ADA: A STATUS REPORT FROM THE DEPARTMENT OF JUSTICE (Apr.-June 2002)................................................................................................ 17

UNITED STATES DEPT. OF JUSTICE, CIVIL RIGHTS DIVISION, ENFORCING THE ADA: A STATUS REPORT FROM THE DEPARTMENT OF JUSTICE (Oct.-Dec. 1999)................................................................................................ 17

UNITED STATES DEPT. OF JUSTICE, CIVIL RIGHTS DIVISION, ENFORCING THE ADA: A STATUS REPORT FROM THE DEPARTMENT OF JUSTICE (Apr.-June 1998)................................................................................................ 17

Appellate Case: 12-2955     Page: 7     Date Filed: 11/13/2013 Entry ID: 4095750

Plaintiff-Appellant Tim Lors files this supplemental brief in response to this Court's order of October 10, 2013.

## Introduction and Summary of Argument

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court described the process courts should follow in determining whether the ADA validly abrogates state sovereign immunity in any particular case. (The *Georgia* Court specifically addressed Title II of the ADA, but it applied basic constitutional principles that are relevant in any ADA abrogation case.) Courts should, the Court said, determine "on a claim-by-claim basis" the answers to the following three questions:

> (1) which aspects of the State's alleged conduct violated [the statute]; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated [the statute] but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.

The sequence dictated by *Georgia* serves the basic principle of "avoid[ing] the unnecessary resolution of constitutional questions." *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 197 (2009). The first step in the *Georgia* inquiry ensures that, if the plaintiff has not shown a violation of the ADA, the court will not proceed to decide the constitutional question. See *Hagans v. Lavine*, 415 U.S. 528, 549 (1974) (Court

1

addresses statutory claim first "because if the appellees' position on this question is correct, there is no occasion to reach the constitutional issues") (internal quotation marks omitted).

The second step ensures that the court will not decide a broader constitutional issue where a narrower one will decide the case. See *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008) (noting the "fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.") (internal quotation marks omitted). If the conduct that forms the basis for the plaintiff's ADA claim also violates the Fourteenth Amendment (including any of the Bill of Rights provisions incorporated in that Amendment), then the statute's abrogation of sovereign immunity is valid as *remedial* Section 5 legislation as applied to the plaintiff's case. See *Georgia*, 546 U.S. at 158-159. In such a case, the court will not have to reach the question whether the ADA's abrogation, as applied to a broader class of cases, is valid *prophylactic* Section 5 litigation. "[J]udging the constitutionality of an Act of Congress is 'the gravest and most delicate duty that this Court is called on to perform,'" *Northwest Austin*, 557 U.S. at 204-05 (quoting *Blodgett v. Holden,*

2

275 U.S. 142, 147–148 (1927) (Holmes, J., concurring)). Accordingly, a court that can uphold a federal statute as applied to the facts before it, without reaching any broader question regarding the statute's constitutionality, should do so. See *United States v. Raines*, 362 U.S. 17, 20-22 (1960) (holding that a portion of the Civil Rights Act of 1957, 42 U.S.C. § 1971, was constitutional as applied to the facts of the case, but declining, on constitutional avoidance grounds, to address the constitutionality of the federal statute more broadly). It is only when the case cannot be resolved on statutory grounds (*Georgia* Step One) or on narrow, fact-specific constitutional grounds (*Georgia* Step Two), that a court should address the broader question of whether the ADA is valid prophylactic legislation (*Georgia* Step Three).

Following the *Georgia* sequence, the district court stopped at Step One, because it concluded that Lors's claim failed on the merits. Under the procedure dictated by *Georgia*, this Court must review the district court's conclusion before it moves on to Step Two. If this Court agrees that Lors's claim fails on the merits, then this case was properly dismissed. As we argued in our opening and reply briefs, however, the district court's conclusion was wrong. Lors both presented direct evidence of retaliation and provided sufficient evidence to overcome summary judgment on the burden-shifting

3

analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). And although the district court relied in part on the "preclusive effect" of Lors's earlier proceedings in the state Career Service Commission and Unemployment Insurance Appeals Division, R.61 at 11, the court also concluded that there was "at least a question of fact as to whether the interplay, if any, between the ADA claim and the ultimate termination was actually litigated by Lors and was essential to the determination of whether there was cause apart from Lors's ADA claim for the discipline and termination of Lors's employment," *id.* at 9. Accordingly, it was inappropriate for the court to rely on preclusion in granting summary judgment for the defendants. This Court must, therefore, proceed to *Georgia* Step Two.

At Step Two, this Court should uphold the ADA's retaliation provision as applied to this case. *Georgia* held that the ADA validly abrogates state sovereign immunity as applied to a case in which the same conduct that violates the ADA also violates the Fourteenth Amendment. By retaliating against Lors for filing his earlier federal-court suit against the state for violating his rights under the ADA, the state violated Lors's First Amendment right, incorporated in the Fourteenth Amendment, to speak and petition the government on a matter of public concern. Both the content of Lors's speech—an allegation of unlawful discrimination by the state—and its form

4

and context—a federal-court lawsuit, with highly formal, highly public proceedings—demonstrate that the speech was on a matter of public concern.

Because this Court can uphold the ADA's abrogation of state sovereign immunity as applied to this case at *Georgia* Step Two, it has no need to proceed to Step Three and ask whether that abrogation can be upheld more broadly. But if the Court does consider that broader question, it should still uphold the abrogation. At the very least, Title V of the ADA is valid Fourteenth Amendment enforcement legislation as applied to the class of cases in which states retaliate against their workers for filing lawsuits alleging violations of Title I of the ADA. Such cases are a subset of the "class of cases implicating the fundamental right of access to the courts," *Tennessee v. Lane*, 541 U.S. 509, 533-534 (2004), in which the Supreme Court has already held that the ADA is valid legislation to enforce the Fourteenth Amendment. Even if the class of cases involving retaliation for filing lawsuits alleging violations of the ADA is considered on its own, and not as a subset of the class addressed in *Lane*, Title V of the ADA is congruent and proportional as applied to it. Because the ADA's cause of action for retaliation protects speech that is often protected against retaliation by the Constitution itself, "there is reason to believe that many of the [acts it reaches] have a significant likelihood of being unconstitutional," *City of Boerne v.*

Appellate Case: 12-2955    Page: 12    Date Filed: 11/13/2013 Entry ID: 4095750

*Flores*, 521 U.S. 507, 532 (1997)—particularly when the state retaliates against the filing of a lawsuit.

Regardless of whether this Court upholds the abrogation of sovereign immunity as applied to this case, it should permit Lors's request for reinstatement to proceed under *Ex parte Young*, 209 U.S. 123 (1908). That request seeks nothing more than prospective, injunctive relief. Lors properly sought injunctive relief in his *pro se* complaint, and the state waived any opportunity to ask that he plead the request more specifically.

Finally, if the Court proceeds beyond *Georgia* Step One, it must notify the Attorney General as required by 28 U.S.C. § 2403(a) and Fed. R. App. P. 44(a). Those provisions require that the Attorney General be notified whenever a party argues that an Act of Congress is unconstitutional, so that the Attorney General may be given an opportunity to intervene to defend the statute's constitutionality. If the Court proceeds to decide whether the ADA's statutory abrogation of sovereign immunity is constitutional, there can be no doubt that it is calling the constitutionality of an important Act of Congress at least partly into question.

Appellate Case: 12-2955    Page: 13    Date Filed: 11/13/2013 Entry ID: 4095750

## Argument

## I. The ADA's Abrogation is Constitutional as Applied to This Case, Because the State Conduct that Violated the ADA Also Violated Lors's First Amendment Rights

By retaliating against Lors for filing a lawsuit under the ADA, the state violated Lors's rights under the First Amendment, as incorporated in the Fourteenth Amendment. The Speech Clause of the First Amendment guarantees state employees the right to speak, without retaliation, on matters of public concern. See *Connick v. Myers*, 461 U.S. 138 (1983). It is well settled that litigation can be an exercise of the right of free speech. See, *e.g.*, *NAACP v. Button*, 371 U.S. 415, 429-431 (1963). The Petition Clause of the First Amendment similarly guarantees state employees the right to petition the government for redress of grievances, without retaliation, on matters of public concern. See *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011). The Supreme Court has long held that "the right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-897 (1984). See also *BE & K Const. Co. v. NLRB,* 536 U.S. 516, 525 (2002). Accordingly, Lors's prior lawsuit was constitutionally protected against retaliation so long as it "was on a matter of public concern," *Duryea*, 131 S. Ct. at 2491, and the encroachment on First Amendment rights was not justified by

7

"the government's interest in the effective and efficient fulfillment of its responsibilities to the public," *Connick*, 461 U.S. at 150. Applying these standards, Lors's lawsuit was protected against retaliation.

To determine whether a public employee's speech is on a matter of public concern, courts must look to the "content, form, and context" of that speech. *Connick*, 461 U.S. at 147; accord *Kozisek v. County of Seward*, 539 F.3d 930, 936 (8th Cir. 2008). Each of these factors dictates that Lors's lawsuit was on a matter of public concern.

The content of Lors's lawsuit was an allegation of unlawful discrimination by the state. Allegations of discrimination are "inherently" matters of public concern. *Connick*, 461 U.S. at 146, 148 n.8. See also *Richardson v. Sugg*, 448 F.3d 1046, 1062 (8th Cir. 2006) ("matters of racial discrimination are 'inherently of public concern'") (quoting *Connick*, 461 U.S. at 148 n.8); *Hall v. Missouri Highway & Transp. Comm'n*, 235 F.3d 1065, 1067 (8th Cir. 2000) (complaint about age discrimination "touched upon a matter of public concern"); *Greenwood v. Ross*, 778 F.2d 448, 457 (8th Cir. 1985) ("Appellant's filing of an EEOC charge and a civil rights lawsuit are activities protected by the first amendment.").[1] More generally, an allegation that

---

[1] For additional cases making the same point, see *Warren v. Ohio Dep't of Pub. Safety*, 24 F. App'x 259, 267 (6th Cir. 2001) ("Allegations of racial and sexual discrimination are inherently matters of public concern even if they

8

a governmental employer has violated the law—civil or criminal—is a matter of public concern, because there is an intense public interest in whether the state is complying with its legal obligations. See Richard Moberly, *The Supreme Court's Antiretaliation Principle*, 61 CASE W. RES. L. REV. 375, 395-396 (2010) (noting that the Supreme Court has never held that speech that "identified illegal employer conduct" fails the public-concern test). This Court has recognized the point. See *Sexton v. Martin*, 210 F.3d 905, 911 (8th Cir. 2000) (finding the law "clearly established that the disclosure of potential illegal conduct of public officials was a matter of public concern").

The form and context of Lors's expression also demonstrate that it was on a matter of public concern. Lors made his expression in the form of a complaint and further filings in the context of a lawsuit filed in federal

---

are tied to personal employment disputes."); *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000) ("complaint of racially disparate treatment, which consisted of an internal grievance, is a matter of public concern"); *Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) (gender discrimination by public officials "is as much a matter of public concern as racial discrimination"); *Marshall v. Allen*, 984 F.2d 787, 795-96 (7th Cir. 1993) (speech alleging "sex discrimination in a public agency" was on a matter of public concern); *Matulin v. Vill. of Lodi*, 862 F.2d 609, 612-13 (6th Cir. 1988) (statements that "involve[d] allegations of invidious discrimination by a public employer based on the sex and perceived handicap of a public employee" were of public concern); *Leshinskie v. N. Montco Area Vocational Technical Sch.*, CIV. A. 88-7972, 1989 WL 30685 (E.D. Pa. Mar. 29, 1989) (denying motion to dismiss teacher's claim that employer violated First Amendment rights by retaliating against, *inter alia*, teacher's complaint to state department of education about violation of teacher's rights under the Rehabilitation Act).

Appellate Case: 12-2955    Page: 16    Date Filed: 11/13/2013 Entry ID: 4095750

court. As the Supreme Court recently made clear, "[t]he forum in which a petition is lodged" is significant in determining whether a public employee's petition is of public concern. *Duryea*, 131 S. Ct. at 2501. The Court noted that a "petition filed with an employer using an *internal grievance procedure*" will "in many cases" not be of public concern. *Id.* (emphasis added). But the Court reaffirmed the principle that "'[t]he right of access *to courts* for redress of wrongs is an aspect of the First Amendment right to petition the government.'" *Id.* at 2494 (emphasis added) (quoting *Sure–Tan, Inc.*, 467 U.S. at 896–897). This Court has similarly noted that a lawsuit is "the most formal method of speech," and that this fact weighs in favor of finding it to be speech on a matter of public concern. *Gunter v. Morrison*, 497 F.3d 868, 872 (8th Cir. 2007).

Where an individual files a lawsuit in federal court to challenge illegal discrimination by his or her government employer, that individual's expression occurs in a proceeding whose form and context is, quite significantly, public. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (explaining that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents") (footnotes omitted); *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) ("There is a common-law right of access to judicial rec-

10

ords."); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("Under the common law judicial records and documents have been historically considered to be open to inspection by the public."). Federal-court dockets, records, proceedings, and decisions are at least presumptively open to the public. See generally ROBERT TIMOTHY REAGAN, SEALING COURT RECORDS AND PROCEEDINGS: A POCKET GUIDE (Federal Judicial Center 2010). Journalists often follow and check federal court dockets. See, *e.g.*, ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, A JOURNALIST'S GUIDE TO THE FEDERAL COURTS 11 (2011) ("If you are the federal court beat reporter, you will need to keep abreast of all the noteworthy cases on the court's docket."). A lawsuit in federal court is a very different—and far more public—form and context of speech than were the form and context of the internal office questionnaire that the employee circulated in *Connick*, 461 U.S. at 148.

It is of no moment that Lors filed his original lawsuit at least in part to serve his own interests in recovering damages for the state's alleged violation of federal law. This Court has held that an employee's speech was a matter of public concern even where the district court found that it "was motivated solely by self-interest." *Gunter*, 497 F.3d at 872. Although this Court has sometimes said that "[w]hen speech relates both to an employee's

11

private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern," *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007), this Court's opinion in *Gunter* explained that an exclusive focus on the speaker's *motivation* was inconsistent with *Connick*: "*Connick* makes clear, however, that whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Gunter*, 497 F.3d at 872.[2] As the discussion above shows, the content, form, and context of Lors's statement demonstrates that it addressed a matter of public concern.

Nor was the retaliation against Lors's lawsuit justified by the state's interest "in the effective and efficient management of its internal affairs."

---

[2] And, indeed, *Altonen* was a case in which the "content, form, and context" of the plaintiff's speech, and not just its motivation, demonstrated that it was not of public concern. The *Altonen* plaintiff, a police officer, alleged retaliation for filing a state-court open-records suit in which she sought nothing more than a copy of the file of an internal investigation into her own conduct. See *Altonen*, 487 F.3d at 557, 559-560. That is a far cry from a federal-court suit alleging that a state agency violated a federal antidiscrimination law. This Court's subsequent decision in *McCullough v. Univ. of Arkansas for Med. Sciences*, 559 F.3d 855, 866 (8th Cir. 2009), also recited *Altonen*'s "primarily motivated" language. But its ultimate holding that an employee's purely internal sexual harassment complaint, filed against the people who earlier filed a sexual harassment complaint against him, was not speech on a matter of public concern, is one that did not depend entirely on the employee's motivation. And the *McCulloch* plaintiff's purely internal complaint is, again, a far cry from a federal-court lawsuit alleging that the state violated a federal antidiscrimination law.

Appellate Case: 12-2955    Page: 19    Date Filed: 11/13/2013 Entry ID: 4095750

*Duryea*, 131 S. Ct. at 2500. Although Lors did not prevail in his lawsuit, there was no finding that it was sanctionable, frivolous, meant to harass, or the sort of "sham litigation" that would exclude Lors from Petition Clause protection. *BE & K Const.*, 536 U.S. at 528. Accordingly, Lors's prior federal-court complaint was protected under the Speech and Petition Clauses, and the state violated his First Amendment rights when it retaliated against him for filing it. The ADA's abrogation of state sovereign immunity is thus valid at *Georgia* Step Two as applied to his retaliation suit, and this Court should rule for Lors without proceeding further.

## II. Even if the State Did Not Violate Lors's First Amendment Rights, the ADA's Abrogation is Constitutional As Applied to the Class of Cases in Which a State Retaliates Against its Employee's Filing of an ADA Lawsuit

Even if the Court concludes that the state did not violate Lors's First Amendment rights, the ADA's abrogation of sovereign immunity is nonetheless valid as applied here. The Supreme Court has repeatedly held that "Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 727-728 (2003). Accord *Lane*, 541 U.S. at 518. See also *Georgia*, 546 U.S. at 157-158 (noting that neither the plaintiff in *Hibbs* nor the plaintiffs in *Lane* established a violation of their own constitutional rights). And *Lane* made

Appellate Case: 12-2955     Page: 20     Date Filed: 11/13/2013 Entry ID: 4095750

clear that in determining whether a statute is valid prophylactic legislation, a court need not consider the statute "as an undifferentiated whole." *Lane*, 541 U.S. at 530. Rather, if the statute is valid Section 5 legislation as applied to an identifiable "class of cases," the court should uphold the statute as applied to that class and leave broader questions for another day. *Id.* at 530-531. The *Lane* Court thus held that Title II of the ADA, and its accompanying abrogation of state sovereign immunity, was valid as applied to "the class of cases implicating the fundamental right of access to the courts." *Id.* at 533-534. Title V of the ADA, along with its accompanying abrogation of sovereign immunity, is valid prophylactic legislation as applied to the class of cases in which states retaliate against their workers for filing lawsuits alleging violations of Title I of the statute. This is true for two principal reasons.

*First*, the class of cases in which states retaliate against workers for filing lawsuits alleging discrimination under the ADA is a subset of the "class of cases implicating the fundamental right of access to the courts"—in which the Court has *already* held that the ADA validly abrogates sovereign immunity. *Lane*, 541 U.S. at 533-534. As the *Lane* Court recognized, the fundamental right of access to the courts is actually a constellation of rights, drawn from a variety of constitutional provisions, including the First

14

Amendment. See *id.* at 523. And the Supreme Court has repeatedly recognized that the opportunity to petition the courts for redress of grievances without fear of retaliation is an aspect of the First Amendment's "'right of access to courts.'" *Duryea*, 131 S. Ct. at 2494 (quoting *Sure-Tan*, 467 U.S. at 896-897). Accord, *e.g.*, *BE & K Const. Co.*, 536 U.S. at 525; *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). *Lane* therefore dictates that the ADA's abrogation of sovereign immunity is valid as applied to the class of cases in which states retaliate against their employees for filing lawsuits alleging violations of their rights under the ADA.

*Second*, even if *Lane* had not already decided this case, the application of Title V to prohibit retaliation against state employees who file suits alleging discrimination under the ADA "is congruent and proportional to its remedial object, and can 'be understood as responsive to, or designed to prevent, unconstitutional behavior.'" *Hibbs*, 538 U.S. at 740 (quoting *City of Boerne*, 521 U.S. at 532. As the *Boerne* Court explained, prophylactic legislation is congruent and proportional when "there is reason to believe that many of the laws affected by the congressional enactment have a significant likelihood of being unconstitutional." *City of Boerne*, 521 U.S. at 532. The class of cases involving state retaliation against employees who file lawsuits alleging violations of the ADA readily satisfies that test. A lawsuit alleging

Appellate Case: 12-2955    Page: 22    Date Filed: 11/13/2013 Entry ID: 4095750

that a state employer has violated the ADA has (at the least) a "significant likelihood" of constituting expression on a matter of public concern, which the First Amendment's Speech and Petition Clauses protects against retaliation. The content of such a lawsuit—an allegation that a state has engaged in unlawful discrimination—is a paradigm case of speech on a matter of public concern. And when such an allegation is made in the highly formal and public form and context of a lawsuit, it is especially likely to satisfy the "public concern" test of *Connick* and subsequent cases. See Part I, *supra*.

To the extent that the ADA's retaliation provision, as applied to the class of cases at issue here, prohibits conduct that is not itself unconstitutional, that additional margin is amply justified by the frequency of retaliation against those who complain about discrimination. Analysts agree that such retaliation is pervasive, and that workplace dynamics often "make retaliation a likely response to charges of discrimination." Deborah L. Brake, *Retaliation*, 90 MINN. L. REV. 18, 19-20 (2005). See also B. Glenn George, *Revenge*, 83 TUL. L. REV. 439, 466 (2008) (detailing evidence that retaliation is a pervasive response to claims of discrimination). EEOC charge statistics show that thousands of retaliation charges are filed against employers,

Appellate Case: 12-2955     Page: 23     Date Filed: 11/13/2013 Entry ID: 4095750

under statutes other than Title VII, each year.[3]  These statistics do not list ADA retaliation claims against states specifically (though they include both public and private employers).  But evidence from the Department of Justice's enforcement records specifically demonstrates that public employers retaliate against workers who file ADA complaints.[4]  And, both before and after the ADA's enactment, there has been "extensive litigation and discussion of the constitutional violations," cf. *Board of Trustees of Univ. of Ala-*

---

[3]  See EEOC, Charge Statistics, FY 1997 Through FY 2012, http://www.eeoc.gov/eeoc/statistics/enforcement/charges.cfm.  These statistics postdate the ADA's enactment, but that is no barrier to their consideration.  The *Lane* Court relied extensively on post-enactment evidence of a pattern of constitutional violations to justify upholding the ADA as valid Section 5 legislation.  See *Lane*, 541 U.S. at 524-525.  Cf. *Northwest Austin*, 129 S. Ct. at 2512 ("current burdens" of Voting Rights Act preclearance "must be justified by current needs").

[4]  See, *e.g.*, *United States v. Baltimore County*, No. 1:12-cv-02327 (D. Md. 2012) (consent decree in ADA employment case alleging, *inter alia*, retaliation); *United States v. City of Colorado Springs*, 07-cv-02560-LTB-CBS (D. Colo. 2008) (consent decree in ADA employment retaliation case); UNITED STATES DEPT. OF JUSTICE, CIVIL RIGHTS DIVISION, ENFORCING THE ADA: A STATUS REPORT FROM THE DEPARTMENT OF JUSTICE (Apr.-June 2002) (announcing $88,000 "settlement agreement with the Nevada Governor's Committee on Employment of People with Disabilities to resolve a complaint of retaliation"), available at http://www.ada.gov/aprjun02.htm; UNITED STATES DEPT. OF JUSTICE, CIVIL RIGHTS DIVISION, ENFORCING THE ADA: A STATUS REPORT FROM THE DEPARTMENT OF JUSTICE (Oct.-Dec. 1999) (announcing ADA employment retaliation lawsuit against New Chicago, Indiana), available at http://www.ada.gov/octdec99.htm; UNITED STATES DEPT. OF JUSTICE, CIVIL RIGHTS DIVISION, ENFORCING THE ADA: A STATUS REPORT FROM THE DEPARTMENT OF JUSTICE (Apr.-June 1998) (announcing $40,000 settlement in ADA employment retaliation suit against Tatum, New Mexico), available at http://www.ada.gov/aprjun98.htm.

Appellate Case: 12-2955     Page: 24     Date Filed: 11/13/2013 Entry ID: 4095750

*bama v. Garrett*, 531 U.S. 356, 376 (2001) (Kennedy, J., concurring), in First Amendment suits alleging that states have unconstitutionally retaliated against employees who reported illegal discrimination. See, for example, the cases cited at page 8 & n.1, *supra*. This record is more than sufficient to justify any slight margin by which, as applied to the class of cases at issue here, the ADA's retaliation provision extends beyond the requirements of the Constitution itself.

In evaluating the record, it is crucial that the ADA's retaliation provision does not just enforce the equal protection rights of persons with disabilities—rights that implicate only rational-basis scrutiny. See *Garrett*, 531 U.S. at 366-368. Rather, that provision enforces the "basic constitutional guarantees" of the Speech and Petition Clauses of the First Amendment, infringements of which (as with the constitutional rights at issue in *Lane*) "are subject to more searching judicial review." *Lane*, 541 U.S. at 522-523. Because these First Amendment rights trigger more than rational-basis scrutiny, Congress's evidentiary burden to justify the ADA's retaliation provision is lighter than it was to justify the ADA's underlying rights of nondiscrimination and accommodation in employment. See *Hibbs*, 538 U.S. at 735-736 (upholding the family-care provisions of the Family and Medical Leave Act; distinguishing *Garrett* because the rights at issue there triggered only ration-

al-basis review; and holding that because the constitutional rights underlying the FMLA triggered more searching scrutiny, "it was easier for Congress to show a pattern" justifying the statute).

In *Hibbs*, for example, the Court relied on evidence of sex discrimination and sex stereotypes in *private-sector* workplaces to justify Congress's abrogation of state sovereign immunity in *public-sector* FMLA cases. See *Hibbs*, 538 U.S. at 730-732. Justice Kennedy, in dissent, pointed out that "the evidence considered by Congress concerned discriminatory practices of the private sector, not those of state employers." *Hibbs*, 538 U.S. at 746 (Kennedy, J., dissenting). Although evidence of private-sector discrimination was not sufficient to justify the abrogation of sovereign immunity in *Garrett*, 531 U.S. at 371-372, the *Hibbs* Court found it sufficient because the constitutional rights underlying the FMLA triggered more than rational-basis scrutiny. See *Hibbs*, 538 U.S. at 736. Here, the acknowledged pervasiveness of retaliation in workplaces in general, plus the EEOC charge statistics, plus the specific evidence from the DOJ's enforcement records that *public* employers have retaliated against workers who allege violations of their rights under the ADA—not to mention the extensive litigation of First Amendment retaliation claims against *public* employers who have retaliated

19

against employees who have spoken out about discrimination—fully justifies the minimal prophylactic sweep of the ADA's retaliation provision.

The only appellate case to reach a contrary conclusion is *Demshki v. Monteith*, 255 F.3d 986 (9th Cir. 2001). But *Demshki* predates the Supreme Court's decision in *Lane*, and *Lane* fatally undermines *Demshki*'s analysis. *Demshki* simply applied *Garrett*'s analysis of the congruence and proportionality of Congress's prohibition of disability-based *employment discrimination* to the related but distinct context of *retaliation* against those who complain about employment discrimination—without ever considering the quite different constitutional rights, rooted in the First Amendment, that Congress is enforcing in the retaliation context. See *Demshki*, 255 F.3d at 988-989. By looking beyond the Equal Protection Clause to the "variety of other basic constitutional guarantees" implicated by the ADA, *Lane* decisively rejected such an unduly narrow analysis of congressional abrogations of sovereign immunity. *Lane*, 541 U.S. at 522.

Not surprisingly, no other court of appeals has followed the Ninth Circuit's pre-*Lane* decision in *Demshki*. Even in the Ninth Circuit, it is unclear whether *Demshki* remains good law after *Lane*. In its post-*Demshki*, post-*Lane en banc* decision in *Alaska v. EEOC*, 564 F.3d 1062, 1069-1071 (9th Cir. 2009) (*en banc*), cert. denied, 558 U.S. 1111 (2010), the Ninth Cir-

20

cuit held that the anti-retaliation provision of the Government Employee Rights Act, 42 U.S.C. § 2000e-16a, validly abrogated state sovereign immunity because it enforced the First Amendment right of government employees to speak on matters of public concern. That decision stands in substantial tension with *Demshki*.[5]

Even if any *particular* instance of retaliation does not violate the Constitution, the significant likelihood that a state's retaliation against an employee's ADA lawsuit will be unconstitutional ensures that the retaliation provision is, as applied to the class of cases in which states retaliate against lawsuits alleging violations of the statute, "a reasonable prophylactic measure, reasonably targeted to a legitimate end." *Lane*, 541 U.S. at 533. At least as applied to that class of cases, the ADA's retaliation provision is valid at *Georgia* Step Three.

### III. Even if the Court Concludes That the ADA Does Not Validly Abrogate Sovereign Immunity Here, Lors's Claim for Reinstatement Can Proceed Under *Ex Parte Young*

The Supreme Court established in *Ex parte Young*, *supra*, that sovereign immunity does not bar an action for prospective injunctive relief against

---

[5] In any event, *Demshki* is inapposite. The plaintiff there alleged retaliation on the basis of a purely internal complaint to his boss. See *Demshki*, 255 F.3d at 987. *Demshki* was thus not part of the class of cases in which states retaliate against workers for filing lawsuits alleging discrimination under the ADA—the class of cases that encompasses Lors's case, in which we contend the ADA's retaliation provision is plainly constitutional.

Appellate Case: 12-2955    Page: 28    Date Filed: 11/13/2013 Entry ID: 4095750

state officials sued in their official capacity. See *Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011). Lors's claim for reinstatement plainly satisfies those requirements. Lors did not simply sue the state *eo nomine*; he also sued the relevant state officials in their official capacity. His complaint expressly sought "injunctive relief." R.1 at 5. And Lors made clear, after the panel raised the sovereign immunity issue *sua sponte*, that the injunctive relief he sought was "[r]einstatement to previous employment." Lors 5/3/13 Supplemental Br. 9-10. This Court has held that reinstatement is a prospective injunctive remedy under *Ex parte Young*. See *Campbell v. Arkansas Dep't of Correction*, 155 F.3d 950, 962 (8th Cir. 1998).

It is of no moment that Lors's complaint asked for injunctive relief generally, rather than specifically referring to reinstatement or *Ex parte Young*. Lors filed that complaint *pro se*. The Supreme Court has held that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (internal quotation marks omitted). The Tenth Circuit held that an *Ex parte Young* claim could proceed in a very similar case. In *Guttman v. Khalsa*, 669 F.3d 1101, 1129 (10th Cir. 2012), the plaintiff's *pro se* complaint did not "expressly request[]" prospective re-

22

lief.  Nonetheless, as soon as the state defendants argued that the case should be dismissed because the complaint did not assert an *Ex parte Young* claim, the plaintiff replied that he was, in fact, seeking injunctive relief.  See *id.* at 1127.  Because the plaintiff had "advocated a claim for prospective injunctive relief throughout the litigation"—notwithstanding its omission from his *pro se* complaint—the Tenth Circuit concluded that "the district court erred * * * when it held that the individual defendants' absolute immunity barred the *Ex parte Young* claim."  *Id.* at 1129.

If anything, the case for considering an *Ex parte Young* claim is stronger here than in *Guttman*.  The complaint in *Guttman* "did not expressly request prospective relief or refer to the individual defendants in their official capacities."  *Guttman*, 669 F.3d at 1127.  Here, Lors *both* expressly sued the individual defendants in their official capacities *and* expressly sought injunctive relief.  Moreover, if the state had doubts about what sort of injunctive relief Lors sought, it had numerous options available to it to resolve those doubts, including by filing a motion for more definite statement under Fed. R. Civ. P. 12(e) or a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  But the state did not take up any of those options, nor did it challenge the sufficiency of Lors's request for injunctive relief in its motion for summary

Appellate Case: 12-2955     Page: 30     Date Filed: 11/13/2013 Entry ID: 4095750

judgment or its briefing on appeal.  Accordingly, the state has waived any argument that Lors failed to properly plead an *Ex parte Young* claim.[6]

### IV.  If the Court Addresses the Constitutionality of the ADA's Abrogation of Sovereign Immunity as Applied to This Case, It Must Certify the Case to the Attorney General

The Attorney General of the United States has an important role in defending the constitutionality of federal statutes.  Recognizing that role, 28 U.S.C. § 2403(a) provides that in any case in which "the constitutionality of any Act of Congress affecting the public interest is drawn in question" and the United States is not already a party, "the court shall certify such fact to the Attorney General, and shall permit the United States to intervene" to defend the constitutionality of the statute.  Federal Rule of Appellate Procedure 44(a) similarly provides that "[i]f a party questions the constitutionality of an Act of Congress in a proceeding in which the United States or its agency, officer, or employee is not a party in an official capacity," the clerk of the court "must . . . certify that fact to the Attorney General."

These provisions are mandatory.  When a case presents the question of the constitutionality of a federal statute affecting the public interest, the

---

[6] Although a state cannot easily waive an Eleventh Amendment bar to a lawsuit simply by failing to assert it in litigation, there is no question that a claim for reinstatement in this case would satisfy the *Ex parte Young* exception.  The only question is whether Lors's *pro se* complaint was sufficient to plead such a claim.  A state can, of course, waive the argument that a claim was insufficiently pleaded.

24

court "shall certify" the case to the Attorney General under 28 U.S.C. § 2403(a). And when a party questions the constitutionality of *any* federal statute, a court "must" certify the case to the Attorney General under Fed. R. App. P. 44(a). The ADA is a federal statute of major public importance. And the state has called into question the constitutionality of an important provision of that statute—42 U.S.C. § 12202, which abrogates state sovereign immunity. Accordingly, the Court must certify the case to the Attorney General and permit him to intervene to defend its constitutionality.[7]

## Conclusion

The judgment of the district court should be reversed.

Respectfully Submitted.

/s/Samuel R. Bagenstos
Samuel R. Bagenstos
625 S. State St.
Ann Arbor, MI 48109
(734)647-7584
sbagen@gmail.com
*Counsel for Plaintiff-Appellant*

---

[7] It makes no difference that the state's argument calls into question the constitutionality of only a portion of the ADA. Abrogation of state sovereign immunity for employment retaliation is an unquestionably important aspect of the statute, and if it is held unconstitutional, state employees will be deprived of a key protection Congress sought to provide them. The Attorney General has repeatedly intervened in post-*Lane* cases drawing into question the constitutionality of the ADA's abrogation as applied to particular cases or classes of cases. See the briefs collected here: http://www.justice.gov/crt/about/app/briefs_stats.php.

Appellate Case: 12-2955    Page: 32    Date Filed: 11/13/2013 Entry ID: 4095750

## Certificate of Compliance and Virus Scanning

  This brief was prepared in 14-point Times New Roman font. Excluding materials excluded by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 5,991 words. Pursuant to Eighth Circuit Rule 28A(h)(2), this brief has been scanned for viruses and is virus-free.

/s/ Samuel R. Bagenstos

Samuel R. Bagenstos

Counsel for the Plaintiff-Appellant

**Dated:**  November 12, 2013

# CERTIFICATES OF SERVICE
## FOR DOCUMENTS FILED USING CM/ECF

### Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/_____